FILED
2006 Sep-12 PM 04:30
U.S. DISTRICT COURT
N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| **JONATH S. NICHOLAS,** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| **vs.** | ) | Civil Action Number |
| | ) | **2:05-cv-0176-UWC** |
| **THE BOARD OF TRUSTEES** | ) | |
| **OF THE UNIVERSITY OF** | ) | |
| **ALABAMA,** | ) | |
| | ) | |
| Defendant. | | |

### OPINION ON MOTION FOR SUMMARY JUDGMENT

In this case brought under 42 U.S.C. Section 2000e *et seq.* ("Title VII"), Plaintiff Jonath S. Nicholas ("Nicholas") claims that Defendant Board of Trustees of the University of Alabama ("UAB") discriminated against him based on his gender and race, and that it retaliated against him.

Based on the undisputed facts, Defendant's Motion for Summary Judgment has previously been granted.

In this Memorandum Opinion, the Court sets forth the underlying factual and legal bases of the summary judgment.

### I. THE UNDISPUTED FACTS

1. Nicholas is a black male citizen of the United States and of the State of

Alabama.

2.  As a student, Nicholas played varsity basketball for UAB in 1981 and 1982.

3. Nicholas was subsequently employed for ten years as an assistant coach/recruiting coordinator for a very successful men's basketball team at a community college.  In his fifth year at the community college, Nicholas was promoted to associate coach/recruiting coordinator. (Doc. 24, Pl.'s Dep. at pp. 69-71, 73.)

4.  On December 27, 2001, the head coach of women's basketball at UAB, Jeannie Milling ("Milling"), a white female, hired Nicholas as an assistant coach. Nicholas replaced Charles Junkins, also a black male.

5.  Amy Champion ("Champion"), a white female, was promoted to the position of associate head coach of UAB's women's basketball team in 1999. Champion also served as the team's recruiting coordinator.  The 2003-2004 basketball season marked Champion's 10th season with UAB. (Doc. 22, Ex. 20.)

6.  For purposes of the Motion for Summary Judgment, the Court assumes that Milling and Champion were involved in a lesbian relationship at all material times during Nicholas' employment by UAB, and that reports of the relationship were

known to UAB's Director of Athletics ("AD"), Watson Brown.[1] The Court further assumes that this relationship between a supervisor and her subordinate contravened UAB policy. (Pl.'s Dep. at pp. 91, 148, 150-52, 154.)

7. In addition to his coaching duties, Nicholas impressively recruited for UAB's women's basketball team. Nicholas worked under two separate "at will" employment contracts with UAB. The first covered the August 1, 2002, through July 31, 2003 academic year. Nicholas had no problems during his first contractual period. (Pl.'s Dep. at pp. 62-63, 74-78, Doc. 22. Ex. 2, 3, 5.)

8. After the expiration of his first contract, Nicholas was re-hired for a second year under a new "at will" contract. The second contract covered the 2003-2004 academic year.

9. Within the first four months of the 2003-2004 academic year, Milling received reports that Nicholas had made sexually inappropriate remarks and inappropriately communicated with one of the female basketball students over a computer web-camera at nighttime. Nicholas was invited to meet with Milling concerning this complaint, but he did not attend the meeting.

---

[1] AD Brown received complaints from players and parents that Milling and Champion brought their personal conflicts onto the basketball court in front of the players during team practices. Brown took no disciplinary action based on these complaints. (Doc. 22 Ex. 19.)

10. On September 30, 2003, Milling suspended Nicholas from his coaching duties with pay.

11. On October 24, 2003, Nicholas was given the choice of resigning or being relieved of his coaching duties and accepting new duties in the Athletics Department. Nicholas elected to be reassigned to new duties.

12. Upon the expiration of Nicholas's 2003-04 contract, UAB did not offer him a new contract for the 2004-05 academic year.

13. On several occasions, Nicholas heard Milling making remarks such as: "guys are different than girls," "men are spineless," "never depend on a man for anything," "don't ever trust a man," and "men are good for only one thing." He also heard Milling refer to black female UAB basketball players as "just dumb," "stupid," and "deaf and dumb." He never heard her make similar remarks concerning white female UAB basketball players. (Pl.'s Dep. at pp. 80, 110, 113, 269-80.)

14. Milling was fired by AD Brown on March 10, 2004, because of the team's won/loss record and because the players did not respect Milling. (Doc. 24, Brown Dep. at pp. 38-39, 42-68, 108-09.)

15. Audra Smith, a black female, was selected by AD Brown to replace Milling as head coach of the UAB's women's basketball team. At the time of her selection, Smith had ten years of experience as an assistant coach and recruiting

coordinator at one of the top women's basketball programs in the country, the University of Virginia, a Division I-A school.

16.   Between 2002-2004, Nicholas' annual salary as an assistant coach was approximately $32,000.  Champion's annual salary as an associate head coach and recruiting coordinator was approximately $60,000 during the same period of time.

17.   Between 2000 and 2003, the salaries for the non-head coaches for UAB women's basketball were as follows:

| Name | Sex | Race | Salary |
|---|---|---|---|
| Amy Champion | female | white | $60,000 |
| Jennifer Wasson | female | white | $32,000 |
| Charles Junkins | male | black | $22,000. |
| Mitch White | male | white | $32,000 |
| Jonath S. Nicholas | male | black | $32,000 |

(Doc. 22., Exs. 2,3, 27, 28, & 29-31; Pl.'s Dep. at pp. 163-171, 305, Brown Dep. Ex. 12).

18.  When Assistant Coach Jennifer Wasson's contract expired in 2002, it was not renewed.

19.  After Milling was fired, Nicholas applied for her position. His application was not seriously considered by AD Brown. (Brown Dep. pp. 118-122.)

20.   When Audra Smith was selected as the head coach of UAB's women basketball team, she hired an entirely new staff of assistant coaches.

21.  Head Coach Audra Smith made the decision not to extend a new contract

to Nicholas at the expiration of his 2002-03 contract.

22.   Nicholas filed charges of discrimination with the Equal Employment Opportunity Commission ("EEOC") against UAB on December 23, 2003, and June 30, 2004.

Nicholas claims three discrete adverse employment actions:  1) disparate salary, when compared with that of Amy Champion,  2) his suspension under false allegations of sexual harassment,  3) his termination, and  4) the failure to hire him as a coach. (Doc. 25, p. 22).

## II.  SUMMARY JUDGMENT STANDARD

In the Eleventh Circuit, :

> [s]ummary judgment is appropriate where there is no genuine issue of material fact. The trial court must consider all the evidence in the light most favorable to the non-moving party and resolve all reasonable doubts in favor of the non-moving party. ... [I]n support of the plaintiff's position ... there must be evidence on which the jury could reasonably find for the plaintiff. ... [S]ummary judgment [is mandated] against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case.... If the evidence is *merely colorable,* or is *not significantly probative,* summary judgment may be granted.

*Earley v. Champion Intern. Corp.* 907 F.2d 1077,1080-81 (11th Cir.1990) (citations omitted).

In cases alleging sexual or racial discrimination under Title VII,

> ... claims based on circumstantial evidence are evaluated under the *McDonnell Douglas* burden shifting framework. To establish a *prima facie* case for disparate treatment in a race [or gender] discrimination case, the plaintiff must show that: (1) [h]e is a member of a protected class; (2) [h]e was subjected to an adverse employment action; (3) [h]is employer treated similarly situated employees outside of [h]is protected class more favorably than [h]e was treated; and (4) [h]e was qualified to do the job. If the plaintiff satisfies these elements, then the defendant must show a legitimate, non-discriminatory reason for its employment action. If it does so, then the plaintiff must prove that the reason provided by the defendant is a pretext for unlawful discrimination.

*Burke-Fowler v. Orange County, Fla.*, 447 F.3d 1319, 1323 (11th Cir. 2006) (citations omitted).

"[T]he question of whether the plaintiffs are similarly situated with non-minority members is crucial." *Marshall v. Western Grain Co.*, Inc. 838 F.2d 1165, 1168 (11th Cir. 1988).

In determining whether employees are similarly situated for purposes of establishing a *prima facie* case of disparate treatment, it is necessary to consider whether the employees are involved in or accused of the same or similar conduct and are disciplined in different ways. The most important factors in the disciplinary context are the nature of the offenses committed and the nature of the punishments imposed. ... [T]he quantity and quality of the comparator's misconduct [must] be nearly identical to prevent courts from second-guessing employers' reasonable

decisions...." *Maniccia v. Brown*, 171 F.3d 1364, 1368-69 (11th Cir. 1999) (citations omitted).

### III. DISCUSSION

On his first claim, the Plaintiff has failed to prove that he and his designated comparator, Amy Champion, are similarly situated.

It is undisputed that Amy Champion was the associate head coach and the recruiting coordinator, while Plaintiff was an assistant coach. The positions are obviously different, with the former being a higher-rated position than the latter.

Furthermore, Champion's tenure at UAB was significantly longer than that of the Plaintiff.

Finally, the evidence is undisputed that the other assistant coaches, male and female, black and white, were paid the same salary as the Plaintiff.

On his claim of a racial or gender-motivated suspension, the Plaintiff has failed to show that any white or female assistant coach faced with allegations of sexual harassment of students was not suspended. At most, he has shown (basically by inadmissible hearsay) that a black assistant coach was similarly situated. He has not alleged that a white assistant coach was accused of sexual harassment of student

players.[2]

Consequently, the claim of disparate treatment in suspensions must fail.

The Plaintiff's final claim is that he was terminated because of his race and sex, and in retaliation for his having filed an EEOC charge against UAB.

The undisputed facts show that the Plaintiff was not discharged. Rather, he worked the entirety of his contractual employment period.

The fact that Plaintiff was not re-employed for a third year is unremarkable, since none of the assistant coaches were re-employed by the new head coach for the 2004-05 academic year. This fact is also dispositive of the Plaintiff's retaliation claim, since the evidence does not support a contention that the failure to renew these employment contracts of the incumbent assistant coaches was a pretext for retaliation.

Although the Plaintiff established a *prima facie case* of gender discrimination in the failure to consider him for the vacant head coach position in March 2004, the undisputed facts clearly show that the black female hired for the position was objectively better qualified than the Plaintiff.

---

[2] The Plaintiff points to the lesbian relationship between Milling and Champion, which was sometimes evident to the students. But this relationship did not involve alleged harassment of anyone, and certainly not student players.

## CONCLUSION

Because the undisputed facts establish that the Plaintiff has not carried his burden of proof of either 1) a racial or gender-based salary differential, 2) a racially or gender-based suspension, 3) a racially based non-renewal of his contract, or 4) retaliation for having filed an EEOC charge, the Defendant is entitled to judgment as a matter of law.

Judgment has been entered accordingly.

Done the 12th day of September, 2006.

_____
U.W. Clemon
Chief United States District Judge